Case number 23-7109 et al. Elisabeth Regina Marie Gabrielle von Pezold et al. versus Republic of Zimbabwe et al. Mr. Smith for the balance. Mr. Fabarella for the appellees von Pezold et al. Mr. Zaslowski for the appellees border timbers et al. Morning Mr. Smith. Good morning sir. May it please the court. My name is Quinn Smith. I'm here on behalf of Appellant. I would like to make one note. I am joined by the Attorney General of Zimbabwe who is here to my right, Ms. Mabizo. Your Honor, this is an appeal about two sets of treaties. Their limitations on any waiver of sovereign immunity and the interaction between those sets of treaties and the Foreign Sovereign Immunities Act. Now the first set of treaties are the New York Convention and what we call the ICSID Convention. And they are useful for analyzing the implied waiver in 1605 A1. That's going to be the first set of treaties we discussed. And the second set of treaties goes to the so-called arbitration exception. That's 1605 A6. So let's look at the first set of treaties. The District Court erred when it found that Zimbabwe's ratification of the ICSID Convention was an implied waiver of its sovereign immunity. Why don't you start with the arbitration exception? Because if we reach that, we've held that we don't need to reach implied waiver, right? You're correct, sir. Recent precedent like NextEra. Yes, sir. Seems that precedent's difficult for you. Why don't you tell us why we shouldn't follow that here? Absolutely, sir. I'll go to the arbitration exception. If you'd like to hear about the but on the arbitration exception, we're looking at what the instruments are that created the consent. And those are the treaties. And these treaties are unique. They're different. There's language regarding how the award should be enforced. And we don't see this kind of language in other sets of treaties. We really don't see in other sets of treaties with Zimbabwe. Perhaps a little bit with Germany, but certainly not in other countries. And that language has very exacting terms. So for example, if we look at the Swiss treaty, section 10-6, the award quote, shall be enforceable in accordance with the laws of the contracting party, capital C, capital P, in which the investment is located. Shall is mandatory. It's not optional. It doesn't say maybe. In accordance with, so it tells the courts, how is this going to be enforced? And then where in the with the laws of the contracting party, capitalized must be either Switzerland or Zimbabwe, in which the investment is located has to be either Switzerland or Zimbabwe. And so what we are asking is just to enforce these words as they are written, where the award or how this award must be enforced. And it is complete. So the enforcement of this award must occur in Harare, in Zimbabwe. I don't follow. It tells you what law we use in accordance with the laws is a choice of law provision. It's explicit. So it's telling you that it should be done in accordance with the laws of here, Zimbabwe. But I don't see anything in your brief that says that enforcing it pursuant to what, you know, filing in U.S. District Court in D.C. is is contrary to the laws of Zimbabwe for enforcing an arbitral award. Sure. Well, I mean, in a sense, you're right that there isn't an analysis of Zimbabwean law and how that would get to the U.S. Neither party made that analysis. Instead, what we're saying is it has to be enforced in accordance with the laws of Zimbabwe. And this is not being done. It's the laws of the United States. And so what we are arguing in the interpretation of what the U.S. court can apply international law, U.S. court can apply New York law or Zimbabwean law or any other law. Right. Now, every day, it is true that it can. Now, I think the thing with this text and I think what you'd be referring to perhaps in your law clause, a lot of times those are specifically found in contracts where we're looking at substantive law. In this context, it's it's everything right in accordance with the laws of the contracting party, not the substantive laws. It doesn't exclude a conflict of laws provision, which we often see in contracts. It's everything. And there was never an application of Zimbabwean law as it applies to the enforcement of this award. Much, much more so in the German treaty, which says that it shall be enforced in accordance with the domestic law of the contracting party in the territory of which the investment in question is situated. You're quoting there from 11-3, right? Yes, sir. The same language is in 11-2, right? Yes, sir. And isn't that language in 11-2 a choice of law provision or it's it's talking about the source of substantive law because it's in the last sentence of 11-2 and it talks about the what the arbitral tribunal is supposed to use and it says it's supposed to base its decision on disagreement in the treaties, international law and the domestic law of the contracting party in the territory of which the investment in question is situated. Yes, sir. Exactly. So, well, but there is a key difference because that's what the tribunal is going to do. And this is what the court is going to do. And in the context of these kinds of arbitrations. Is the phrase going to mean the same thing in 11-2 that it means in 11-3? Well, because in 11-2, you would get to Zimbabwean law, sort of it's a process from the treaty to international law to Zimbabwean law, because there can be issues of Zimbabwean law that are specifically relevant to the treaty, such as the creation of a company, whether the company existed or not, whether a person is an investor because they have a passport or not. Can dual nationals bring a claim? Those things will come sort of subsidiarily after the treaty, international law and Zimbabwean law. But when you get to enforcement, all that stuff is done, right? Especially in an exit case, because there's no annulment. The court's not going to come around and kill the award. All it can do is look at the award and say, well, here's how we're going to enforce it. There's a U.S. statute to enforce a six-convention award. But in this context, strangely, no one knows why, there is specific language in the instrument of consent as to how it must be enforced, and that would be Zimbabwean law. So see, I'm not connecting. I guess the point is that this is an enforcement context, which has a limited set of issues, as opposed to the arbitral tribunal having a much broader set of issues and a much broader mandate. And that is the key difference. Now, as far as once you look at those two laws, it's still Zimbabwean law, right? The tribunals look at Zimbabwean law. The enforcement court looks at Zimbabwean law. On that, yes, we would be in agreement. But it wouldn't be the same as the analysis the tribunal undertakes applying international law and the treaty. So, yes, sir. I understood the argument in your brief to be that the language in 11.3 is not just a choice of laws, but also a form selection. Yes, sir. Yes, sir. Today, it sounds like you're making a slightly different argument. No. That because it's a choice of law clause. No, I'm sorry. I started with the Swiss treaty, which doesn't have the words in the territory of they're not there. It just says contracting party in which the investment is located. And the German treaty is the contracting party in the territory of which the investment in question is located. And so that's the difference between the two treaties. And so we're saying that the words in the territory of they have to mean something. They're not repeating the choice of law. They're talking about where it is to be enforced. And so that's the difference. So here's my question about that. Yes, sir. So the sentence ended shall be enforced in accordance with the domestic law of the contracting party. Yes. And we have a problem because we wouldn't know which contracting party. So the rest of the answer, the sentence answers that question. The contracting party in the territory of which the investment in question is situated. You need that language to make it a comprehensible choice of law provision. And what I'm having trouble understanding is why it should also be treated as a form selection clause. Because in the Swiss treaty, actually, you just have in which the investment is located and you don't have in the territory of. And so there's a difference. What's the meaning of the difference? And that's how we get to. That's a venue question, isn't it? As to which venue would be appropriate. It seems to me there's two issues in each case. And one is common. And that is whether the district court had jurisdiction. That's dependent upon FASA. And that's dependent upon what Judge Wilkins said is the arbitration. There are two arbitration agreements. Yes, sir. Follows that the district court had jurisdiction. The question you're arguing is whether venue is proper. I think it's a little bit different because of the nature of. And the question then is whether that provision in the Swiss treaty and the same provision in the German treaty is a choice of law provision or is a venue provision. And the district court held that it was a choice of law provision in both. Yes. Yes. Yes. Yes, he did, sir. And it wouldn't be a venue in this case because we're talking about a waiver of sovereign immunity and the waiver comes from the arbitration, the instrument that creates the consent to arbitration. And here, by selecting that it shall be enforced in Zimbabwe, then it's more than just a sort of run of the mill venue provision, but rather it's saying. Did the district court have jurisdiction to decide that this could be enforced only in Zimbabwe? Yes, sir. Yeah, well. That's a smart point. But I think that that would come from the fact that it's a federal court that is facing an exit award that can seek, where they can seek enforcement under 22-1658. So, I mean, that's where we would see that power to come from and then they get to the clause and say, yes or no. I am way over my time. I apologize. Any further questions? All right. We'll give you some time on rebuttal. Thank you, sir. We'll hear from Mr. Paparella. Yes, your honor. Thank you. Chris Paparella from the Steptoe firm for the Von Petzold family of appellees. And I'm here with a co-counsel from Baker McKenzie, David Zaslowski, who represents the Border Company and Border Timbers and Hungani, the other appellees here. He's with his partner, Graham Cronog, and I'm with my colleagues, Michael Barrett, Justin Ben Asher, and Jenny Askew. Mr. Zaslowski and I have divided up the 10 minutes you gave us, five minutes apiece. I'm going to cover the arbitration exception in the FSIA and Mr. Zaslowski will cover the waiver exception if we get to that. I'll keep my remarks brief. It's the submission of both sets of appellees that the provisions that Zimbabwe relies on in its investment treaties with Germany and Switzerland are choice of law provisions. The phrase in the territory is answering one question and one question only, which territory's law applies. And this is highlighted by the very similar language that's contained in Germany's investment treaty with India, which Zimbabwe quotes and relies on at page three of its brief. The Swiss treaty doesn't have that language, does it? The Swiss treaty's language is somewhat different than the German treaty. The Swiss treaty's language says the laws of the contracting party in which the investment in question is located. The German treaty says the domestic law of the contracting party in the territory of which the investment in question is located. And the Indian-Germany treaty says, in accordance with the national laws of the contracting party, where the investment has been made. So each of the treaties uses a slightly different verbiage, but all three verbiages seek to answer the same question. And the question is not where, but whose law. Because you can say the same thing in different ways, and that's all they've done here. Our submission is that once you satisfy yourselves that those provisions are law provisions, your decision in NextEra a few weeks ago applies here. And NextEra lays out a very simple test. Is there an arbitration agreement? And that first question has two levels. Here you have two investment treaties. Do those treaties contain an agreement between two countries to offer arbitration to each other's and the answer here is yes. Both treaties contain an offer to arbitration. Was that offer accepted by the nation? Does the Republic of Zimbabwe even contest that point? They don't contest that point. They don't contest that there are arbitration awards. They don't contest that those were exit awards. These people arbitrated for eight years under exit. They had an opportunity to try and nullify the awards. And lastly, they don't contest that the awards, there's a treaty signed by the United States, Zimbabwe, Germany, and Switzerland that governs these awards, that provides for enforcement. That's the exit treaty. They don't contest that. It's on page one of the reply brief. What is the United States connection with this case? The United States connection with this case is that the appellees are seeking to enforce in the exit office in Washington. Zimbabwe seems to contest whether it was really held in the United States because the territory of the World Bank is not in the United States. Is that the theory? The World Bank is not the Vatican, Your Honor. The World Bank is located in the United States. I know. I'm sorry. I don't mean to be sarcastic. That's their argument. We dispute that argument, Your Honor. There's no dispute between the parties that on the agreement of the parties, and they could have agreed to hold the hearing someplace else. Exit allows them to do that. They agreed to hold the hearings and did hold the hearings right here in Washington, D.C. in the United States of America. And so that's the connection between the United States and the exit convention and this case. But the World Bank is like an embassy, right? In as far as application of the national. In terms of a taxation, yes. I don't know that it's an embassy and they don't argue that it is. Employees are not taxed by the federal government of World Bank employees, no matter what their citizenship is. But there is questions. Matter of fact, we've had cases dealing with what United States laws, for example, Title seven and discrimination apply to the World Bank. So it's a mixed. OK, I understand that. But even if the court were to accept Zimbabwe's argument that holding an arbitration at the World Bank in Washington did not involve holding an arbitration in America, it's confirmation under the foreign arbitration exception of the Foreign Sovereign Immunities Act would still be proper because the United States has adopted as a party to the exit convention. It has agreed under the exit convention to enforce exit awards from other exit countries. Zimbabwe is an exit country. Germany is and Switzerland is. And so enforcement is proper here. So. Your your contention would be that even if the arbitration had occurred, let's just say in Zimbabwe physically. Enforcement would still be proper. Absolutely, your honor. If you can. There's nothing in the FSA that requires there to be some sort of a. Connection to the US of the dispute or the arbitration or anything else where there to be subject matter jurisdiction of a US district court. That's correct. Nothing in the FSA in the in the FSA, in particular, in the arbitration exception in the FSA requires that the arbitration itself have a connection with the United States of America. In fact, although this was did not come up on appeal, but below the Zimbabwe raised the forum nonconvenience argument. And there's a long line of cases that holds that this court and the district courts in DC have held the forum nonconvenience is not an appropriate inquiry when you're seeking to enforce an arbitration award from another country under one of the arbitration awards. All right, there are no other questions. We'll hear from your colleague. Thank you, your honor. May it please the court. David's is lastly from Baker McKenzie and as noted, I'll be addressing the waiver exception. I recognize from what you said that based on recent jurisprudence from this court, you may not get there if you think the arbitration exception applies, and we certainly think it does. But if you do get to the waiver exception, all of the cases before you that have discussed the issue of whether the implicit waiver exception of the FSIA applies when parties seek to enforce an exit award against an exit signatory, they've all held that the implicit waiver exception applies. Zimbabwe has not put before you one case that goes the other way. We've never held that in a reported decision, right? We you've never held that in the reported decision in in in Tatneft and Judge Wilkins and Judge Randolph were on that panel. I mean, yeah, yeah, you've held it in an unpublished opinion. You said that the Second Circuit, you agreed with what the Second Circuit said, and that you know, a sovereign by signing the New York Convention waives its immunity from arbitration enforcement actions in other signatory states. And that was in an unpublished opinion. And in Creighton, you opined, indicted that the Second Circuit was correct when it held that foreign sovereign's way of sovereign immunity. So you've done everything other than, as you said in, as the court said in dextera, everything other than formally adopted. And if you get to the waiver exception here, for whatever reason, nothing that Zimbabwe has said should lead you to change your reasoning in Creighton or in Tatneft or to disagree with the Second Circuit's reasoning in Blue Ridge or in Mobile Cerro. And there's also the recent TIG decision, in which this court said there are three scenarios about seven weeks ago, there are three scenarios in which there is an implicit waiver by a foreign sovereign, one of them is arbitrating in the United States. And getting to the issue we just talked about, our position is that absolutely was in arbitration here in the United States. And so you could affirm the waiver exception argument based on the TIG grounds without getting to this other issue that the court has been hesitant to get to. But if you do get there, if you do get to the issue of the interaction between the arbitration conventions and the implicit waiver exception, there's no reason to change from what you said. The primary argument that they make in their papers is to rely on the amicus brief in the PIND case. And in that case, the issue that the court asked DOJ to opine on was whether the United States impliedly waived its immunity in courts of other New York Convention countries. That's the question that was asked. And the government said, we're not answering that question. They specifically declined to answer that question. What they did then say, their interpretation of the FSIA, that's not entitled to any special deference. That's just an interpretation of a statute, not an interpretation of a treaty. But even if you do look at what they said about interpreting the FSIA, all they said on pages 12 to 13 of that brief is that there is a way to interpret the waiver exception together with the arbitration exceptions. There's a way to interpret it that the two are exclusive. But they also noted that your decision in TATF rejected that interpretation, that the two of those were exclusive. So there is nothing before this court that should lead you to, again as I said before, any other conclusion than what you laid the groundwork for in Creighton and in TATF and that the Second Circuit has decided. And unless there are any questions, I will leave it there. Just very briefly, am I right that a predicate for every version of your implied waiver argument is that there is an arbitration agreement? Is that there is an arbitration agreement? Is an arbitration agreement an award and a treaty under which it can be enforced? I guess I'm trying to understand why our court would ever reach this question because you're always, don't you always already have to win the arbitration exception issue? I admit this is a little academic, but... It is a little academic. I haven't thought about is there an example where one would apply and not, but I do note that in TATF, I mean, this court said, and I'm quoting, the waiver exception requires a foreign sovereign to give up its immunity defense intentionally, whereas the arbitration exception does not. So while the exceptions partially overlap, each contains its own unique elements. So this court did consider it in TATF. It did say that. I cannot stand here right now, give you an example where one would apply and the other would not. All right. Thank you. Mr. Smith, we'll give you three minutes on it. Thank you, sir. On the arbitration exception, we heard that it's about whose law applies. There was an argument that Zimbabwe law was applied, which would be a pretty key distinction, is what actually happened. We heard arguments about whether the arbitration was quote, here. Just a quick distinction. This isn't like Crystal X, which this court handled. That was an additional facility case. The place of arbitration was Washington DC. This is an exit case, and this court cannot compel arbitration before the exit convention. That's mine versus Guinea. I mean, it is a different species. Whenever you go to exit, you renounce other remedies in other courts. It's a different kind of arbitration. We've cited authority for that from the scholarly authority, and there is no contradiction. There was a question about the FSIA and a link to the United States. That's not this case. It can arise in different kinds of cases. We have another case before the DC Circuit on that issue, so I don't want to just say it's okay. FSIA doesn't have to have a connection to the United States, but it is out there in different kinds of cases. Then the final thing, Judge Garcia, I just wanted to touch on what was suggested to be an academic argument, perhaps that as soon as you have an arbitration agreement, an award, and a treaty, that's it. In Next Era, there is that discussion that, well, it's just scope. Once there's scope, that's a meritorious decision, but that scope of what is arbitrable, which is a different question than scope as to where it can be enforced and how it should be enforced, and that's this case. There's not going to be a lot of cases like this. There aren't that many trees out there that are like this, but these specific words need to be enforced as they were negotiated by the parties, and that's why we ask that this court reverse and with instructions to dismiss. If there are no further questions, then I will end early. Thank you. Take the matter under advisement.
judges: Wilkins; Garcia; Randolph